UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADRIAN BOOT,<br><br>               Plaintiff(s),<br>    v.<br><br>RHAPSODY INTERNATIONAL INC.,<br><br>               Defendant(s). | CASE NO. C23-0470-KKE<br><br>ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the parties' cross-motions for summary judgment. Dkt. Nos. 17, 18. The Court has considered the parties' briefing[1] and heard the oral argument of counsel. For the following reasons, the Court denies both motions.

## I.    BACKGROUND

Plaintiff Adrian Boot is a British music photographer who, in 1979, photographed Jamaican musician Lincoln Barrington "Sugar" Minott. Dkt. No. 17-1 ¶ 9. In 2005, Boot licensed a photograph of Sugar Minott ("the photograph") to Soul Jazz Records for use as album artwork, and two other photographs for use inside the album booklet. *Id*. ¶ 11; Dkt. No. 20-4 at 11. Boot registered the photograph with the United States Copyright Office in June 2018. Dkt. No. 17-2.

In March 2022, Boot observed the photograph (alone, not with the album cover graphics) on the website of Napster, a music streaming service operated by Defendant Rhapsody

---

[1] This order refers to the parties' briefing using the CM/ECF page numbers.

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

International, Inc. *See* Dkt. No. 17-1 ¶ 16 (referencing Dkt. No. 1-2). Boot then filed this lawsuit alleging copyright infringement. *See* Dkt. No. 1. The parties conducted discovery and have cross-moved for summary judgment. *See* Dkt. Nos. 14, 17, 18. Those motions are now ripe for resolution.

## II.   ANALYSIS

### A.   Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims[,]" so that "factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). In resolving a motion for summary judgment, the court considers "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### B.   There Are Factual Disputes as to Whether Rhapsody's Use of the Photograph Was Authorized by an Implied or Express License, and Therefore Neither Party is Entitled to Summary Judgment on the Infringement Claim.

Boot's complaint alleges that Rhapsody infringed his copyright in the photograph by displaying it on the Napster website. Dkt. No. 1 ¶¶ 43–52. A copyright claim has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 2

Rhapsody does not dispute that Boot satisfies those elements, but argues that its display of the photograph was licensed, which is a complete defense to an infringement claim. *See* Dkt. No. 18 at 11 (citing *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) ("[A claim for copyright infringement] fails if the challenged use of the work falls within the scope of a valid license.")). Thus, the Court must consider whether Rhapsody's use of the photograph was licensed in order to determine whether either party is entitled to summary judgment on the claim for copyright infringement.

As noted *supra*, Boot licensed the photograph to Soul Jazz Records for use of the image as album artwork. *See* Dkt. No. 20-4 at 11. According to Rhapsody, that license to Soul Jazz Records included an implied, non-exclusive license to distribute the photograph along with the album, and Soul Jazz Records conferred that right to content aggregator Play It Again Sam ("PIAS"), which then conferred that right to Rhapsody via written contract. Dkt. No. 18 at 13–15. Rhapsody also argues that the license it holds to the *Sugar Minott at Studio One* album, via its contract with PIAS, grants it license to display the photograph. *See id.* at 15–16. Under either of these theories, Rhapsody argues that it is entitled to summary judgment on the infringement claim.

In opposition, Boot contends that Rhapsody's implied-license argument is improperly raised because "no such defense was asserted in [its] Answer." *Id*. at 17 (citing Dkt. No. 7). Rhapsody did, however, assert an affirmative defense of license: "Plaintiff's claims are barred in whole or part because any alleged use of the image by Rhapsody was licensed by or through a third party." Dkt. No. 7 at 6. This is sufficient to notify Boot of Rhapsody's defense on an implied-license theory. *See, e.g.*, *McElroy v. Courtney Ajinça Events LLC*, 512 F. Supp. 3d 1328, 1336 (N.D. Ga. 2021) ("Plaintiffs' argument that the absence of the word 'implied' in Defendants' affirmative defenses waives Defendants' right to assert the existence of an *implied* license is unpersuasive."). Boot also contends that Rhapsody does not have an express license to display the

photograph because Rhapsody has not sufficiently shown a chain of licenses that starts with Boot and ends with Rhapsody. Dkt. No. 24 at 9–10. The Court will therefore turn to consider whether Rhapsody's use of the photograph was authorized by either an implied or an express license that would defeat Boot's infringement claim.

    1. <u>There is a Question of Fact as to Whether Boot's License to Soul Jazz Records Included an Implied, Non-Exclusive License to Display the Photograph When Distributing the *Sugar Minott at Studio One* Album.</u>

Rhapsody argues that when Boot licensed the photograph to Soul Jazz Records for use as album art, the nature of the transaction objectively indicated an implied understanding that the photograph would be distributed with the album. Dkt. No. 31 at 9. According to Rhapsody, "when a person licenses a photograph for use 'on the cover artwork' for an album, the *only objective conclusion* is the photograph would be distributed with the album." *Id*. at 10.

Rhapsody cites no evidence or authority that supports that argument and has failed to establish that this is the only objective conclusion as a matter of law. It is not clear why Boot should have assumed that when distributing the album, Soul Jazz Records would not only distribute the album cover, but also the photograph used to create the album cover. Rhapsody emphasizes that the court should look to the totality of the transaction between the creator and the licensee to determine whether their course of conduct creates an implied license. *See* Dkt. No. 31 at 9–10 (citing *inter alia Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir. 1990)). However, Rhapsody does not identify anything about the transaction between Boot and Soul Jazz Records that would support its interpretation of the parties' intent.

In *Effects*, a movie producer hired Effects Associates to create certain special effects for a movie entitled "The Stuff," which was eventually distributed by a third party. *Id.* at 555. Although the film footage containing the special effects was used without obtaining a written license, the Ninth Circuit found that Effects had granted an implied license to the movie producer because the

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 4

footage was created at the producer's request with the intent that it be used in the film and with no warning that use of the footage would constitute infringement. *Id.* at 558–59. The court determined that Effects had

> created a work at defendant's request and handed it over, intending that defendant copy and distribute it. To hold that Effects did not at the same time convey a license to use the footage in "The Stuff" would mean that plaintiff's contribution to the film was "of minimal value," a conclusion that can't be squared with the fact that defendant paid plaintiff almost $56,000 for this footage.

*Id.* Relying on *Effects*, in *Asset Marketing Systems, Inc. v. Gagnon*, the Ninth Circuit identified three factors relevant to determining the parties' intent to grant a license:

> (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts … providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible.

542 F.3d 748, 756 (9th Cir. 2008) (quoting *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 41 (1st Cir. 2003)). The *Asset Marketing* court found that an implied license is granted where "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* at 754–55. But where, as here, the work at issue was not commissioned by the licensee, "district courts examine whether 'totality of the parties' conduct indicates an intent to grant' a license to the work." *Evox Prods. LLC v. Yahoo, Inc.*, No.:2:20-cv-02907-MEMF-JEMx, 2023 WL 5506894, at *4 (C.D. Cal. July 28, 2023) (quoting *Montwillo v. Tull*, 632 F. Supp. 2d 917, 924 (N.D. Cal. 2008)).

Here, there is scant evidence of parties' intent when Boot licensed the photograph to Soul Jazz Records for use as album artwork: the only documentary evidence of the license is an invoice instructing Soul Jazz Records to pay licensing fees to Boot for the right to reproduce three images

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 5

on the cover artwork and inside the booklet for the album, with attribution to Boot. *See* Dkt. No. 20-4 at 11. Boot's declaration and Soul Jazz Records' declaration[2] describe their general licensing practices, but do not describe anything specific about the parties' conduct during this licensing transaction in particular. *See* Dkt. No. 17-1, Dkt. No. 26.

Nonetheless, according to Rhapsody, the Court should find that Boot granted an implied license to Soul Jazz Records permitting Rhapsody's "downstream use" of the photograph when distributing the album for three reasons: (1) it is objectively reasonable to assume that images for use as artwork on an album cover and booklet will be distributed with the album, because "the purpose of an album cover is to accompany an album, wherever it may go" (Dkt. No. 22 at 9); (2) Soul Jazz Records released *Sugar Minott at Studio One* in 2005, using the photograph as album art, and Boot has not objected to use of the photograph as album art at any time since then; and (3) Boot's written agreement with Soul Jazz Records did not include any express limitation on the right of Soul Jazz Records to distribute the photograph as album art. *Id*. at 8–10.

Boot disagrees, arguing that it is clear that no implied license was granted to Soul Jazz Records (and therefore could not have been granted to Rhapsody via PIAS). Dkt. No. 24 at 18–19. Specifically, Boot contends that because Soul Jazz Records did not request the creation of the photograph, and instead Boot authored the photograph decades before Soul Jazz Records sought to license it, "[t]hat ends the analysis and the argument as to an implied license." Dkt. No. 24 at 19. Boot cites no authority indicating that this one factor—whether the licensee requested that the

---

[2] Rhapsody suggests that the Court should refrain from considering this declaration (signed by Stuart Baker, owner of Soul Jazz Records) on the grounds that Boot untimely disclosed Baker as a witness. Dkt. No. 31 at 12 (referencing Dkt. No. 20-1 (Boot's initial disclosures)). The Court notes that Rhapsody listed Baker as a witness in its own second amended disclosures on February 22, 2024 (Dkt. No. 32-1), but did not request any relief related to Baker's untimely disclosure by Boot until filing the reply brief to its motion for summary judgment on March 22, 2024. *See* Dkt. No. 31 at 8. This timeline undermines a suggestion of harm resulting from Baker's untimely disclosure.

Moreover, Rhapsody's request for the Court to disregard the Baker declaration is not supported with citation to legal authority, nor does it address whether any other sanction short of exclusion could minimize any harm or prejudice. *See* Dkt. No. 31 at 12. The request is therefore denied at this time, without prejudice to Rhapsody's filing a motion or motion in limine to address this issue more fully, if necessary.

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 6

licensor create the work licensed—is dispositive, however. Neither *Effects* nor *Asset Marketing* nor any other case cited by the parties provides an exhaustive list of the factors that a court must consider, and the Court finds that it should look to the totality of the circumstances surrounding the transaction to determine whether an implied license was granted.

As explained herein, however, the Court's ability to look to the totality of the circumstances of the transaction is hampered by the scant evidence presented on that issue. Rhapsody has not explained why the Court should conclude, as a matter of law, that Boot intended to grant an implied license to Soul Jazz Records that would permit it to distribute the photograph in its original form, rather than the photograph as part of the *Sugar Minott at Studio One* album cover. The Court agrees with Rhapsody that the purpose of an album cover is to accompany the album, but that does not necessarily suggest that Boot and Soul Jazz Records intended that the photograph in its original form would also accompany the album. Boot's declaration squarely denies that he intended any such use by a subsequent third party. *See* Dkt. 17-1 ¶¶ 11–12. However, Rhapsody submitted a declaration[3] from Paul Clifford, a vice president of Rhapsody, indicating that PIAS obtained *inter alia* the photograph pursuant to a license "contain[ing] legal assurances and protections from the licensors, that the licensors did in fact have the right to provide said content to Napster for Napster's contemplated use." Dkt. No. 19 ¶ 9. That Rhapsody received the photograph from PIAS suggests that PIAS received it from Soul Jazz Records, but the Court cannot determine on this record whether that transfer was consistent with the license Boot granted to Soul Jazz Records.

---

[3] Boot moved to strike the Clifford declaration and its attachments as inadmissible hearsay (Dkt. No. 24 at 10–15), but the Court denies this request. As argued by Rhapsody (Dkt. No. 31 at 6–8), because the contents of the Clifford declaration and its attachments are capable of being admitted at trial, they are properly before the Court. *See, e.g.*, *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) ("Rule 56 permits the use of affidavits in evaluating a motion for summary judgment. While the facts underlying the affidavit must be of a type that would be admissible as evidence … the affidavit itself does not have to be in a form that would be admissible at trial.").

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 7

Because the question of fact as to whether Rhapsody's use was within the scope of an implied license granted to Soul Jazz Records cannot be answered on the record before the Court, this issue must be presented to the jury. *See, e.g.*, *Atkins v. Fischer*, 331 F.3d 988, 992–93 (D.C. Cir. 2003) (finding that where there is a genuine issue of fact as to whether an implied license can be inferred from the parties' conduct, summary judgment is inappropriate).

2. There is a Question of Fact as to Whether Rhapsody Received an Express License to Display the Photograph via its Contract with PIAS.

Rhapsody argues that, in addition to the implied license discussed *supra*, it also holds an express written license to display the photograph via its contract with PIAS. Dkt. No. 18 at 15–16. This contract gives Rhapsody a nonexclusive license to "distribute, post, transmit, download, store, reproduce, display and exhibit each Track's corresponding Artwork," where "Track" is defined to mean "each individual sound recording" subject to the contract and "Artwork" is defined to mean "any materials provided by [PIAS] to [Rhapsody], including, but not limited to, album artwork, photographs, visual presentations, images, and likenesses of [PIAS's] artists." Dkt. No. 19-4 at 2, 4, 5. The contract also allows Rhapsody to make "formatting changes to the Artwork, as may be necessary to transmit and reproduce the Artwork in connection with the operation of [Napster]." *Id.* at 6.

Rhapsody contends that because Boot licensed the photograph to Soul Jazz Records (Dkt. No. 20-4), and Soul Jazz Records distributed the photograph as album art with *Sugar Minott at Studio One* in accordance with an apparently unwritten agreement with PIAS (Dkt. Nos. 19-3, 19-5), and Rhapsody obtained rights to *Sugar Minott at Studio One* from PIAS (Dkt. No. 19-4), "[t]his

chain of licenses[4] … is precisely what all parties, including Mr. Boot, intended when he charged Soul Jazz Records £552.25 for a license to use the photograph." Dkt. No. 22 at 11.

Whether a written agreement between Soul Jazz Records and PIAS exists or not, no evidence in the record illuminates the terms of that agreement, and as a result the Court has no basis to find as a matter of law that PIAS in fact had the rights that Rhapsody purports to have received from PIAS. Boot submitted a declaration signed by Baker, the owner of Soul Jazz Records, who states that it is Soul Jazz Records' standard practice to "provide the cover artwork[,]" but not to provide a sublicense to use the raw images contained in the cover artwork. *See* Dkt. No. 26 ¶¶ 7–8. Baker's declaration does not specifically address any arrangement made with PIAS in particular. *Id*. To the extent that Baker describes Soul Jazz Records' arrangement with PIAS, his declaration conflicts with the Clifford declaration discussed *supra*, wherein Napster's vice president states that PIAS "did in fact have the right to provide [content including the photograph] to Napster for Napster's contemplated use." Dkt. No. 19 ¶ 9.

In sum, because the Court finds that on this record, there are questions of fact as to whether Rhapsody's use was licensed either expressly or impliedly, and that issue is dispositive to both cross-motions for summary judgment, both motions must be denied and this case must proceed to trial.

C. **Even if Rhapsody's Use of the Photograph Was Unauthorized, Boot Has Not Shown That He Is Entitled to Statutory Damages.**

As a remedy for Rhapsody's alleged infringement, Boot requests damages under Section 504 of the Copyright Act, which allows a plaintiff to request an award of actual damages or statutory damages, defined as "a sum of not less than $750 or more than $30,000 [per work

---

[4] At oral argument, Rhapsody's counsel retreated from the "chain of licenses" metaphor to suggest that PIAS has an agency relationship with Soul Jazz Records, and therefore there would be no written agreement between them that would identify the rights conferred.

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 9

infringed] as the court considers just." 17 U.S.C. §§ 504(b), (c)(1).  If a defendant's infringement is shown to be willful, the court has discretion to increase the statutory damages award up to $150,000.  17 U.S.C. § 504(c)(2).  Here, both parties also request an award of attorney's fees and reimbursement of litigation costs under the Copyright Act, as the prevailing party.  *See* 17 U.S.C. § 505.

Rhapsody argues that Boot is not entitled to statutory damages or attorney's fees due to the operation of the statutory bar found in 17 U.S.C. § 412.  That section bars an award of statutory damages or attorney's fees if the infringement alleged "commenced" after the work was first published and "before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412(2).  Rhapsody has submitted evidence that Boot first published the photograph in 2002[5] when it was licensed to Fuel 2000 Records for use as album artwork and publicity, and that Boot did not register his copyright in the photograph until June 2018.  *See* Dkt. No. 20-4 at 2, 10.  Rhapsody contends that because *Sugar Minott at Studio One* was released in June 2008 and Rhapsody may have displayed the photograph at that time (Dkt. No. 19 ¶¶ 13–16, Dkt. No. 19-3), or at least as early as 2013 (Dkt. Nos. 30, 30-1), the Court cannot award Boot statutory damages, attorney's fees, or costs.

Boot disputes whether Rhapsody first displayed the photograph in June 2008, relying on a search of the Internet Archive Wayback Machine, indicating that the photograph was first displayed on Napster's service in 2020.  *See* Dkt. No. 27-1.  Boot's evidence establishes that the photograph was displayed in 2020, but not that it was *first* displayed in 2020.  *Id*.  Rhapsody submitted Internet Archive Wayback Machine evidence in support of its reply brief, indicating that

---

[5] Boot emphasizes that his copyright registration states that the photograph was first published in 1990.  Dkt. No. 24 at 21.  The Court need not determine whether the photograph was first published in 1990 or 2002 because either year is long before the *Sugar Minott at Studio One* album was created and many years before Boot registered his copyright.

it (as Rhapsody, not as Napster) displayed the photograph in 2013. *See* Dkt. No. 30-1. The discrepancy between Boot's evidence and Rhapsody's evidence as to the date appears to be based to some degree on the fact that Rhapsody re-branded its music streaming service from Rhapsody to Napster at some point (as counsel discussed at oral argument), and thus each party searched different websites for evidence of the photograph's display.[6] For this reason, even if the Court takes judicial notice of the websites offered by each party (Dkt. Nos. 27-1, 30-1), this evidence is insufficient by itself to establish when Rhapsody's alleged infringement commenced and/or whether it was continuous. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700–01 (9th Cir. 2008) ("Every court to consider the issue has held that 'infringement "commences" for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.'" (quoting *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998))).

Because the record before the Court is not conclusive as to when Rhapsody's alleged infringement commenced or whether the infringement was continuous, and the answer to that question is dispositive of the issue of whether Boot can be awarded statutory damages if he succeeds on his infringement claim at trial, this factual question must also be resolved by the fact-finder at trial.

### III.   CONCLUSION

For these reasons, the Court DENIES Plaintiff's cross-motion for summary judgment (Dkt. No. 17) and DENIES Defendant's cross-motion for summary judgment (Dkt. No. 18). The Court

---

[6] At oral argument, Boot's counsel contended that due to the re-brand of Rhapsody to Napster, the Court should find that Rhapsody's infringement was not "continuous" and thus the statutory bar does not apply. As explained herein, the record on this issue is scant and the Court finds that neither party has provided conclusive evidence showing that it is entitled to summary judgment on this issue as a matter of law.
   To the extent that Rhapsody submitted additional evidence explaining the operation of the Internet Archive Wayback Machine after the summary judgment briefing was concluded (Dkt. No. 36), a notice of supplemental authority is not the proper vehicle for submitting new evidence in support of a ripe motion. *See* Local Rules W.D. Wash. LCR 7(n) (permitting a party to provide notice of "relevant authority issued after the date the party's last brief was filed"). The Court therefore grants Boot's unopposed motion to strike.

GRANTS Plaintiff's unopposed motion to strike (Dkt. No. 37).

Because neither party has prevailed on their motion for summary judgment, the Court denies each party's request for an award of attorney's fees and costs at this time.

The parties filed a stipulated motion to continue the trial date to allow the Court additional time to resolve their cross-motions for summary judgment, but the entry of this order moots the need for a continuance. The Court therefore DENIES the stipulated motion (Dkt. No. 38), but in light of the fast-approaching trial date, the Court nonetheless VACATES the existing pretrial deadlines (Dkt. No. 12) and modifies the unexpired pretrial deadlines as follows:

(1) Motions in limine must be filed by May 13, 2024;

(2) Agreed pretrial order must be filed by May 24, 2024;

(3) Proposed voir dire questions, proposed jury instructions, and trial briefs must be filed by May 31, 2024;

(4) Pretrial conference is set for 10 a.m. on June 4, 2024; and

(5) Jury trial is set to begin at 9:30 a.m. on June 10, 2024.

Dated this 3rd day of May, 2024.

Kymberly K. Evanson
United States District Judge